## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CASE NO. 3:22-cv-00181-MR

| | | |
|---|---|---|
| **DAVID EZELLE SIMPSON,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **TODD ISHEE, Secretary of the** | ) | |
| **North Carolina Department of** | ) | |
| **Adult Corrections,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| _____ | ) | |

**THIS MATTER** is before this Court on the Respondent's Motion for

Summary Judgment [Doc. 29]; the Petitioner's Pro Se Motion for Summary

Judgment [Doc. 40]; the Petitioner's Pro Se Motion to Stay [Doc. 25]; the

Petitioner's Pro Se Motion for Order to Show Cause [Doc. 27]; and the

Petitioner's Pro Se Motion to Stay/Hold in Abeyance [Doc. 44].

## I. BACKGROUND

David Ezelle Simpson (the "Petitioner") is a prisoner of the State of

North Carolina (the "State"). On March 11, 2020, the Petitioner pled guilty

in Mecklenburg County Superior Court to two counts of taking indecent

liberties with a child and one count of being a habitual felon.[1]  [Doc. 30-15: Judgment].  The trial court determined that the Petitioner had a prior record level of VI and sentenced him to 144 to 185 months' imprisonment.  [Docs. 30-14, 30-15].  The Petitioner filed a direct appeal of his conviction to the North Carolina Court of Appeals, arguing that his indictment did not contain all of the elements of the offense for which he was charged.  [See Doc. 30-17: Petitioner's Appeal Brief].  His appeal was dismissed on July 6, 2021, as the Petitioner's Notice of Appeal was both untimely and unserved.  [Doc. 30-19: Mtn. to Dismiss Appeal; Doc. 30-21: Court of Appeals Order].  The Petitioner did not seek discretionary review in the North Carolina Supreme Court.  [Doc. 1 at 2].

The Petitioner filed the present Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 in this Court on April 25, 2022; he filed an Amended Petition on May 6, 2022, and an Addendum on July 27, 2022. [Docs. 1; 5; 10].  The Petitioner raises several grounds for relief.  First, he argues that his indictments were fatally defective both because they identified his minor victim only by her initials and because they failed to allege all of the elements of the offense for which he was charged.  [Docs.

---

[1] Pursuant to the Petitioner's plea agreement, the State dismissed the charges of statutory rape, statutory sex offense, and possession of cocaine with intent to distribute that were pending against the Petitioner.  [See Docs. 30-12 at 7:7-19; 30-13 at 5].

2

1 at 5; 3 at 4-6; 5 at 5]. Second, the Petitioner contends that he was improperly charged as a habitual felon and sentenced outside of the presumptive range. [Docs. 1 at 7; 3 at 11-12; 10 at 3-9]. Third, the Petitioner argues that his counsel was ineffective for failing to retain an expert to review the State's DNA evidence, for failing to withdraw from the Petitioner's case, for failing to move for dismissal of the Petitioner's indictments as untimely, and for allowing the Petitioner to receive a longer sentence than allowed by State law. [Docs. 1 at 8; 3 at 6-12; 5 at 7].

After filing the present habeas petition, the Petitioner filed a Motion for Appropriate Relief ("first MAR") in Mecklenburg County Superior Court on May 19, 2022, arguing that he had been improperly charged as a habitual felon, and that he had been sentenced outside of the presumptive range. [See Doc. 30-22: first MAR]. The Petitioner subsequently amended his first MAR twice, initially on May 29, 2022, and again on June 27, 2022, but raised no new arguments. [Docs. 9; 30-24]. The Superior Court denied this MAR on June 29, 2022. [See Doc. 13: Order at 6-7]. The Petitioner then sought review in the North Carolina Court of Appeals by filing a Petition for a Writ of Certiorari, and amended such petition twice. [See Docs. 16-1; 20; 30-25; 30-26; 30-27; 30-28]. Each petition/amendment was denied. [Id.].

On March 16, 2023, the Petitioner filed a Motion to Stay in this Court, arguing that his § 2254 proceedings should be stayed while he seeks to exhaust his claims in State court. [See Doc. 25 at 1-3]. On April 20, 2023, he filed a Motion for Order to Show Cause, in which he reiterates the arguments made in his habeas petitions and in his motion to stay. [See Doc. 27].

The Petitioner states in his filings that he filed another MAR ("second MAR") in Mecklenburg County Superior Court on April 26, 2023, as well as an amendment thereto on June 8, 2023. [See Docs. 43-1 at 2; 44 at 2; 45 at 3]. The Petitioner asserts that all of the claims he presents in this § 2254 action were raised in this second MAR, and that the Superior Court denied his motion. [Doc. 44 at 2]. However, neither party has filed with this Court a copy of this second MAR or the Superior Court's ruling on that motion. The Petitioner filed a Petition for Writ of Certiorari in the North Carolina Court of Appeals seeking review of the denial of his second MAR, [id.], which was denied without prejudice on September 1, 2023, because he did not submit "sufficient supporting documents."[2] [See Doc. 47].

_____

[2] Plaintiff recently made additional filings with this Court regarding his purported second MAR. First, he stated that the second MAR was still pending with the Superior Court. [Doc. 48, filed April 22, 2024]. Then he stated that he had requested that the Clerk of the North Carolina Court of Appeals forward its file regarding this second MAR to *this* Court. [Doc. 49, filed May 14, 2024]. The Court does not anticipate any such transfer from the North Carolina Court of Appeals, as such would be entirely outside ordinary

4

While the Petitioner pursued his second MAR in State court, on May 1, 2023, the Respondent herein filed a Motion for Summary Judgment, along with a memorandum in support, contending that this Court should deny the Petitioner's habeas petitions. [Docs. 29, 30]. The Petitioner responded in opposition on May 17, 2023, before filing his own Motion for Summary Judgment on June 7, 2023. [Docs. 37, 40]. The Respondent filed a response to the Petitioner's motion on June 20, 2023. [Doc. 41]. Neither party filed a reply to the other's response, and the time for so doing has now passed. Therefore, the cross-motions for summary judgment are ripe for disposition.[3]

---

procedure. It is unclear whether Plaintiff has anything pending before the North Carolina Court of Appeals, as he states that he "*will be* filing" a petition with that court within the time allowed. [Id.] (emphasis added). All of this makes clear that Plaintiff has not exhausted any state remedies by way of such second MAR, if such second MAR even exists.

[3] Since the Respondent filed for summary judgment, the Petitioner has continued to make miscellaneous filings, including a "Memorandum of Decision and Order" [Doc. 43], a Motion to Stay/Hold in Abeyance [Doc. 44], as well as several letters and exhibits [Docs. 45, 46, 47]. Therein, the Petitioner seems to repeat the same arguments he made in his petitions and his earlier motions seeking a stay. However, even if the Petitioner intended to raise new issues, he cannot amend his petitions to include these simply by referencing them in response to the Respondent's summary judgment motion. See White v. Keller, No. 1:10CV841, 2013 WL 791008, at *3 (M.D.N.C. Mar. 4, 2013). Indeed, "when a habeas petitioner has not moved to amend his petition, 'the Court will not consider any allegations or arguments stemming from this new claim.'" Id. (quoting Blakeney v. Lee, No. 3:05-CV-10-V, 2007 WL 1341456, at *5 n.3 (W.D.N.C. May 3, 2007), aff'd sub nom. Blakeney v. Branker, 314 F. App'x 572 (4th Cir. 2009)).

5

## II.  STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is material only if it might affect the outcome of the suit under governing law.  Id.

The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56).  The burden then shifts to the nonmoving party to proffer competent evidence and specific facts showing that there is a genuine issue for trial.  Id. at 323-24.  The nonmoving party must oppose a summary judgment motion by going beyond the pleadings and by their own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."  Id. (citing Fed. R. Civ. P. 56).  The nonmoving

6

party "may not rest upon the mere allegations or denials of his pleading" to defeat a motion for summary judgment.  Id. at 322 n.3.

Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the summary judgment motion.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate.  Id. at 599.  A court is bound to enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex, 477 U.S. at 322.

In reviewing the Respondent's Motion for Summary Judgment, the Court must also consider the requirements governing petitions for habeas corpus as set forth in the Antiterrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254(d). The AEDPA applies to "a person in custody under a state-court judgment who seeks a determination that the custody violates the Constitution, laws, or treaties of the United States." Rule 1(a)(1), 28 U.S.C. foll. § 2254. Under the AEDPA, federal courts may not grant relief on a habeas claim that has been adjudicated on the merits

7

in a state court proceeding unless the state court's determination "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision constitutes an unreasonable application of clearly established federal law under § 2254(d)(1) when the state court correctly identifies the "governing legal principle ... but unreasonably applies that principle to the facts of the ... case." Barnes v. Joyner, 751 F.3d 229, 238 (4th Cir. 2014) (citation omitted). In making this assessment, the Court looks "to whether the state court's application of law was objectively unreasonable and not simply whether the state court applied the law incorrectly." Id. at 238-39 (citation omitted).

For a state court's factual determination to be held unreasonable under § 2254(d)(2), "[the determination] must be more than merely incorrect or erroneous." Williams v. Stirling, 914 F.3d 302, 312 (4th Cir. 2019) (citation omitted). The state court's finding must be "sufficiently against the weight of the evidence that it is objectively unreasonable." Id. (citation omitted). The AEDPA also provides that "a determination of a

factual issue made by a State court shall be presumed to be correct" absent "clear and convincing evidence" to the contrary. 28 U.S.C. § 2254(e)(1).

## III.  DISCUSSION

### A.  Failure to Exhaust

The Respondent first contends that he is entitled to summary judgment regarding all of the Petitioner's claims because the Petitioner has failed to exhaust his state law remedies.  [See Doc. 30 at 8, 17, 20].

Under AEDPA, a petitioner must exhaust his available state remedies before he may pursue habeas relief in federal court.  28 U.S.C. § 2254(b)(1)(A).  In North Carolina, a petitioner may satisfy § 2254's exhaustion requirement in one of two ways: (1) by directly appealing his conviction to the North Carolina Court of Appeals and then petitioning the North Carolina Supreme Court for discretionary review; or (2) by filing a state post-conviction proceeding and petitioning the North Carolina Court of Appeals for a writ of certiorari.  Joyner v. Hooks, No. 5:17-HC-02034-D, 2019 WL 3561429, at *3 (E.D.N.C. 2019); N.C. Gen. Stat. § 7A–31; N.C. Gen. Stat. § 15A–1422; see also McNeil v. Whitener, No. 5:11-HC-2058-F, 2012 WL 4086510, at *5 (E.D.N.C. 2012) (to satisfy the exhaustion

requirement, a petitioner must show that "his instant federal claims followed along one of these two tracks to completion of review in the state courts").

By his direct appeal, the Petitioner failed to exhaust his state remedies. He failed to perfect the appeal, causing it to be dismissed. [Docs. 30-19, 30-21]. In addition, he did not seek discretionary review in the North Carolina Supreme Court. Likewise, the Petitioner did not exhaust his state remedies by his second MAR. He filed that MAR more than one year after filing the present habeas petition. Moreover, that MAR was dismissed for the Petitioner's failure to submit sufficient supporting documents. [Doc. 47]. As such, no determination on the merits was ever reached.

Only the Petitioner's first MAR appears to have been decided on the merits. Of the issues raised in this present § 2254 petition, however, only two were addressed in that first MAR: that the Petitioner was improperly charged as a habitual felon and that his sentence exceeded the statutory presumptive range. [Doc. 30-22]. Both of these issues, however, are purely issues of state law, and thus are not cognizable on federal habeas review.

For all of these reasons, the Petitioner's claim herein fails for his failure to exhaust his administrative remedies.

Nonetheless, even though the Petitioner has failed to exhaust his claims, "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."  28 U.S.C. § 2254(b)(2).  Thus, this Court will address the merits of all of the Petitioner's claims.

## B.    Sufficiency of Indictments

The Petitioner contends that his indictments were fatally flawed in that they only stated his victim's initials, as opposed to her full name. [Docs. 1 at 5; 5 at 5].  He also argues that they were defective because they did not specifically allege that he had acted for the "purpose of arousing or gratifying sexual desire."  [Doc. 17 at 4].

"It is black letter law that a federal court may grant habeas relief 'only on the ground that [the petitioner] is in custody in violation of the Constitution or laws of the United States.'"  Wright v. Angelone, 151 F.3d 151, 157 (4th Cir. 1998) (quoting 28 U.S.C. § 2254(a)); see also Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.  In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").  Thus, the Petitioner's contention that he is entitled to

11

relief because his indictments were deficient under North Carolina law "is simply not cognizable on federal habeas review."[4][5] Wright, 151 F.3d at 157 (citing Smith v. Moore, 137 F.3d 808, 822 (4th Cir. 1998)).

"[I]n order to be legally sufficient [under federal law], '[a]n indictment must contain the elements of the offense charged, fairly inform a defendant of the charge, and enable the defendant to plead double jeopardy as a defense in a future prosecution for the same offense.'" See United States v. Loayza, 107 F.3d 257, 260 (4th Cir. 1997) (quoting United States v. Daniels, 937 F.2d 272, 274 (4th Cir. 1992), cert. denied, 506 U.S. 1086 (1993)).

The Petitioner first argues that his indictments are necessarily "fatally flawed" because they do not include the full name of his minor victim and instead refer to her by her initials. However, there is *no* requirement under federal law that a defendant's indictment identify the victims of his crimes. See id.; see also United States v. Baptiste, 747 F.3d 186, 196 (3d Cir.

---

[4] Moreover, under North Carolina law, an indictment naming a minor victim by her initials is *not* fatally deficient as long as it provides the "[d]efendant with sufficient notice to prepare his defense . . . ." State v. Sechrest, 277 N.C. App. 372, 377, 859 S.E.2d 238, 243 (2021). The Petitioner has not argued, or submitted any evidence suggesting, that his defense was hampered in any way as a result of the State's failure to include his minor victim's name in his indictments.

[5] To the extent that the Petitioner properly raised the argument that his arrest warrants were deficient under North Carolina law because they did not contain his victim's full name, this argument is likewise not cognizable on federal habeas review.

2014); <u>United States v. Stringer</u>, 730 F.3d 120, 126-27 (2d Cir. 2013); <u>United States v. Chappell</u>, 6 F.3d 1095, 1099 (5th Cir. 1993); <u>United States v. Mizyed</u>, 927 F.2d 979, 981 (7th Cir. 1991). Moreover, "it is common for the government to identify [minor] victims by initials [in indictments] to protect their identities . . . ." <u>United States v. Volgelpohl</u>, No. 18-CR-2053-CJW-MAR, 2019 WL 2236263, at *3 (N.D. Iowa May 23, 2019). Thus, this argument is without merit.[6]

Second, the Petitioner contends that his indictments were defective in that they did not specifically allege all the required elements of the offense of which he was convicted, taking indecent liberties with a child. [Doc. 3 at 4-5]. Under North Carolina law:

> A person is guilty of taking indecent liberties with children if, being 16 years of age or more and at least five years older than the child in question, **he either**:
>
> > (1)  Willfully takes or attempts to take any immoral, improper, or indecent liberties with any child of either sex under the

---

[6] The Petitioner does not argue that his indictments failed to fairly inform him of the charges against him. However, to the extent that his filings can be construed as raising this issue, the undisputed forecast of evidence before this Court makes clear that the Petitioner was aware of his minor victim's identity. Indeed, the Petitioner's victim was his ten-year-old "grand-niece," and he admits to "ejaculating on this Girl Butt" in what he labels an affidavit. [<u>See</u> Docs. 30 at 15; 38 at 4]. Moreover, before the Petitioner entered his guilty plea, out of what it characterizes as an "abundance of caution," the State sought and obtained superseding indictments containing his victim's full name. [<u>See</u> Doc. 30-7].

age of 16 years for the purpose of arousing or gratifying sexual desire; **<u>OR</u>**

(2) Willfully commits or attempts to commit any lewd or lascivious act upon or with the body or any part or member of the body of any child of either sex under the age of 16 years.

N.C. Gen. Stat. § 14-202.1(a)(1)-(2) (emphasis added).

More specifically, the Petitioner argues that his indictments were defective because they did not allege that he acted "for the purpose of arousing or gratifying sexual desire." [Doc. 3 at 4-5]. He contends that this is an essential element of North Carolina's taking indecent liberties with a child offense. However, the statute, quoted above, clearly provides the State with *two separate avenues* for indicting and proving this offense. While the State must allege that a defendant acted "for the purpose of arousing or gratifying sexual desire" when it proceeds under § 14-202.1(a)(1), it need not do so when proceeding under § 14-202.1(a)(2). Here, the State indicted the Petitioner pursuant to § 14-202.1(a)(2), [Doc. 30 at 16], and his original indictments state:

[O]n or about and between the 12th day of February, 2018 and the 3rd day of March, 2018, in Mecklenburg County, David Ezelle Simpson did unlawfully, willfully, and feloniously commit or attempt to commit a lewd and lascivious act upon and with the body of L.S, who was under the age of sixteen (16) years at the time. At the time, the

14

defendant was over sixteen (16) years of age and at least five (5) years older than that child.

[See Doc. 30-2]. Thus, because the Petitioner's indictments contain each of the required elements of North Carolina's taking indecent liberties with a child offense under § 14-202.1(a)(2), this argument, too, is without merit.

## C. Sentencing Range

The Petitioner next argues that he was improperly charged as a habitual felon under North Carolina law and that he was incorrectly sentenced outside of the presumptive range. [Doc. 1 at 7].

As noted above, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle, 502 U.S. at 68. Indeed, "[c]laims of alleged errors in state law, *including alleged errors in sentencing calculations*, are not cognizable on federal habeas review." Cullins v. Kerley, No. 3:12-cv-801-RJC, 2013 WL 2480673, at *2 (W.D.N.C. June 10, 2013) (emphasis added) (citing Lewis v. Jeffers, 497 U.S. 764, 780 (1990)). Thus, the Petitioner's argument provides no basis for habeas relief.

In any event, the Petitioner was properly sentenced under North Carolina law. The Petitioner pled guilty to the Class F felony of taking

indecent liberties with a child, as well as to being a habitual felon. [See Docs. 30 at 19; 30-13]; see also N.C. Gen. Stat. § 14-202.1(b). As a result of his habitual felon status, North Carolina law required that the Petitioner be sentenced as if he had committed a Class C felony. See N.C. Gen. Stat. § 14-7.6. The presumptive minimum sentence range for an individual with a prior record level VI who is convicted of a Class C felony is 117-146 months. See N.C. Gen. Stat. § 15A-1340.17. Thus, the minimum sentence that the Petitioner received—144 months—is within the presumptive range. [Doc. 30-15]. Additionally, the corresponding maximum sentence for a Class C felony with a minimum sentence of 144 months is 185 months, the maximum sentence that the Petitioner received. See § 15A-1340.17; [Doc. 30-15]. Accordingly, the Petitioner's arguments regarding his sentencing are meritless.

**D.    Ineffective Assistance of Counsel**

The Petitioner contends that his attorney was ineffective because: (1) he did not obtain an expert to review the DNA evidence against the Petitioner; (2), he did not challenge the Petitioner's indictments as untimely,

and (3) he did not challenge the Petitioner's sentence as improper.[7] [Doc. 1 at 8-9; Doc. 3 at 6-14].

The right to counsel guaranteed by the Sixth Amendment includes the "right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To successfully challenge a conviction based on ineffective assistance of counsel, a petitioner must satisfy the two-prong test set forth in Strickland, which requires the petitioner show that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) counsel's deficient performance prejudiced the defense. Strickland, 466 U.S. at 688, 692.

The first prong requires that a petitioner show that counsel's performance was deficient by articulating specific acts or omissions that fell "outside the wide range of professionally competent assistance." Id. at 690. The petitioner must demonstrate "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant

---

[7] The Petitioner also appears to contend that counsel was ineffective because he did not "get off [the Petitioner's] case." [Doc. 5 at 7]. At times, the Petitioner also seems to contend that two judges of the Mecklenburg County Superior Court denied him his right to self-representation by failing to remove his counsel. These arguments will be addressed separately *infra.*

by the Sixth Amendment." Harrington v. Richter, 562 U.S. 86, 104 (2011) (quoting Strickland, 466 U.S. at 687).

To establish prejudice under the second prong, the petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The petitioner must show that counsel's error worked to his "actual and substantial disadvantage," not merely that it created a "possibility of prejudice." Satcher v. Pruett, 126 F.3d 561, 572 (4th Cir. 1997) (quoting Murray v. Carrier, 477 U.S. 478, 494 (1986)).

The Petitioner specifically argues that his counsel was deficient because he did not have an expert review the State's DNA evidence report, even though it indicated that multiple sources of DNA were found on the victim's body.[8] [Doc. 1 at 8]. However, the Petitioner fails to present any argument as to why his counsel's failure to retain an expert to challenge the DNA evidence was unreasonable, especially considering the Petitioner's admission to his counsel that he had in fact ejaculated on his victim.[9] [See

---

[8] The report states that "DNA profiles from at least three individuals was obtained from right hand fingernail swabs. The expected contributor, L.S. is the major contributor. No conclusions can be made regarding the foreign profiles; however, this profile contains at least one male contributor." [Doc. 4 at 12].

[9] The Petitioner states the following in what he labels an affidavit: "I am telling this Court

Doc. 38 at 4]. Given the Petitioner's repeated admissions that he had committed the crime with which he was charged, it was not unreasonable for his counsel to decide that an expert would be unable to challenge the State's DNA evidence.

Additionally, the Petitioner has offered *no* explanation as to how he was prejudiced by his counsel's decision not to retain an expert. Indeed, he has not suggested that there is any *reasonable* likelihood that the evidence could have been successfully challenged. Even still, the State submitted its DNA evidence to both the Charlotte-Mecklenburg Police Department Crime Lab and the North Carolina State Crime Laboratory to ensure that the Petitioner's DNA was in fact a match to that recovered from the victim. [Doc. 12 at 3]. Thus, the Petitioner has not established that he was prejudiced by his counsel's reasonable decision not to retain an expert to challenge the State's DNA evidence.

Next, the Petitioner argues that his counsel was ineffective because he failed to challenge the superseding indictments against the Petitioner as untimely. [Doc. 3 at 7-8]. However, North Carolina law plainly allows for

---

what I told my attorney, so I did try her but I would not have sex with her all I did is ejaculating on this girl butt that all that why they only found semen on her butt . . . ." [Doc. 38 at 4] (errors uncorrected). While the Petitioner's filing is more properly considered a declaration because it is not notarized, it is nonetheless signed by the Petitioner and states that his assertions therein are true under penalty of perjury. [Id. at 6].

state prosecutors to seek superseding indictments "at any time before entry of a plea of guilty to an indictment or information, or commencement of a trial thereof[.]"  See N.C. Gen. Stat. § 15A-646.  Here, the grand jury approved the superseding indictments against the Petitioner on August 5, 2019, [see Doc. 30-7], and he did not plead guilty until March 11, 2020. [Doc. 30-14].  Counsel has no constitutional obligation to raise a baseless claim.

Additionally, the superseding indictments only differed from the originals in that they contained the Petitioner's minor victim's name, as opposed to her initials.  As explained above, the original indictments were effective as written.  Therefore, even if the Petitioner's counsel had been able to successfully challenge the superseding indictments as untimely, the Petitioner did not suffer any prejudice as a result of his decision not to do so.

Finally, the Petitioner argues that his counsel was ineffective because he failed to challenge the Petitioner's sentence as improper.  However, as explained above, the Petitioner was appropriately sentenced as if he had committed a Class C felony, because of his status as a habitual felon, and he received a sentence within the presumptive range.  Thus, the Petitioner

was not prejudiced by his counsel's reasonable decision not to challenge the Petitioner's sentence.

### E.    Denial of Right to Self-Representation

During the state proceedings, the Petitioner sought to have his appointed counsel replaced.  When this request was denied, the Petitioner informed the court that he wanted to represent himself.  Later, however, the Petitioner elected to remain represented by counsel.  Based on these events, it is unclear whether the Petitioner seeks to assert a claim regarding (1) the denial of substitution of counsel, (2) the denial of his right to self-representation, or (3) ineffective assistance of counsel for not agreeing to "get off [the Petitioner's] case."  [Doc. 5 at 7].  In an abundance of caution, the Court will address each of these arguments.

As to the Petitioner's first argument regarding the substitution of counsel, whether the trial court erred in not substituting counsel is not cognizable on habeas review, as that is within the sound discretion of the trial court.  As for the Petitioner's argument that his attorney would not "get off" his case, the Petitioner submits no authority for his contention that this alleged refusal amounts to ineffective assistance of counsel, or that his attorney *actually* refused to withdraw from representing the Petitioner when asked to do so.  In any event, the Petitioner has not put forward any

evidence that he was prejudiced by his counsel's continued representation, or that this continued representation impacted the Petitioner's proceedings at all. Accordingly, the Petitioner has not established that he is entitled to relief on this basis.

Finally, the Court now turns to the Petitioner's claim regarding the alleged denial of his right to self-representation. The Sixth Amendment to the United States Constitution gives a criminal defendant not only the right to the assistance of counsel for his defense, but also the right to represent himself. Faretta v. California, 422 U.S. 806, 818 (1975). Between the right to counsel and the right to self-representation, "the right to counsel is preeminent and hence, the default position." United States v. Singleton, 107 F.3d 1091, 1096 (4th Cir. 1997). "So important is the right to counsel that the Supreme Court has instructed courts to 'indulge in every reasonable presumption against [its] waiver.'" Fields v. Murray, 49 F.3d 1024, 1028 (4th Cir. 1995) (quoting Brewer v. Williams, 430 U.S. 387, 404 (1977)). Therefore, a defendant who wishes to invoke his right to represent himself and thus waive his constitutional right to counsel must do so "clearly and unequivocally." Id. at 1029 (citations omitted).

Here, the transcript of the Petitioner's plea hearing indicates that he had written at least two letters to the trial court requesting to represent

22

himself. [Doc. 30-12 at 4]. The judge advised the Petitioner that he had a right to represent himself and asked the Petitioner if he was satisfied with his current counsel's representation. [Doc. 30-12 at 4-5]. In response, the Petitioner indicated that he no longer wished to represent himself, that he was satisfied with counsel's representation, and that he wanted to continue with his counsel. [Id.]. Accordingly, to the extent that the Petitioner ever invoked his Sixth Amendment right to self-representation, he clearly and unequivocally withdrew his request at the plea hearing. Therefore, he is not entitled to relief on this ground.

## IV. CONCLUSION

For all these reasons, the Respondent's motion for summary judgment is granted, the Petitioner's motion for summary judgment is denied, and the Petitioner's habeas petition, as amended, is denied and dismissed.

Pursuant to Rule 11(a) of the Rules Governing § 2254 cases, this Court declines to issue a certificate of appealability as the Petitioner has not made a substantial showing of a denial of a constitutional right. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims

debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

## ORDER

**IT IS, THEREFORE, ORDERED** that:

(1)     The Respondent's Motion for Summary Judgment [Doc. 29] is hereby **GRANTED,** and the Petitioner's Pro Se Motion for Summary Judgment [Doc. 40] is hereby **DENIED;**

(2)     The Petitioner's Pro Se Petition for Writ of Habeas Corpus [Doc. 1], as amended [Docs. 5, 10] is hereby **DENIED AND DISMISSED**;

(3)     The Petitioner's Pro Se Motion to Stay [Doc. 25], Pro Se Motion for Order to Show Cause [Doc. 27], and Pro Se Motion to Stay/Hold in Abeyance [Doc. 44] are hereby **DENIED AS MOOT**; and

(4)     This Court declines to issue a certificate of appealability pursuant to Rule 11(a) of the Rules Governing § 2254 cases.

The Clerk of Court is respectfully directed to close this case.

**IT IS SO ORDERED.**

Signed: May 15, 2024

Martin Reidinger
Chief United States District Judge